**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

    **v.**                           **CRIMINAL NO. 1:26-CR-15
(KLEEH)**

**CODY LEE SMITH,**

        **Defendant.**

## ORDER DENYING MOTION FOR REVIEW OF DETENTION ORDER [ECF NO. 24]

At 11:00 a.m. on Tuesday, May 12, 2026, at the Clarksburg point of holding court, the Court convened a hearing on *Defendant Smith's Motion for Review of the Detention Order* [ECF No. 24]. Defendant Cody Lee Smith ("Smith" or "Cody Smith") appeared in person and by his counsel, Hilary L. Godwin. Assistant United States Attorney Andrew R. Cogar appeared for the Government. A probation officer was also present. During the hearing, the Government presented evidence, and both parties presented arguments. For the reasons discussed below, the Court **DENIES** the motion.

On March 3, 2026, the grand jury returned a four-count Indictment charging Smith with the following:

- (Count One) Threats Against the President, in violation of 18 U.S.C. § 871;

- (Count Two) Threats Against the President, in violation of 18 U.S.C. § 871;

USA V. SMITH                                                    1:26-CR-15

**ORDER DENYING MOTION FOR REVIEW OF DETENTION ORDER [ECF NO. 24]**

- (Count Three) Influencing and Retaliating Against Federal Officials by Threat, in violation of 18 U.S.C. § 115(a)(1)(B); and

- (Count Four) Influencing Federal Official by Threat, in violation of 18 U.S.C. § 115(a)(1)(B).

Specifically, the Indictment alleges that Smith began posting public messages on his Instagram account that encouraged and threatened the murder of President Donald J. Trump, citizens who support him (including members of the military), Israelis, and all government officials.  For example (to convey the nature of the threats), the Government alleges that Smith posted or messaged the following (and more) on social media:

- "Donald Trump just announced the goddamn hunger games[.]  IMPEACH THIS MOTHERFUCKER WITH A .308."

- "If I see a single trump supporter I don't care the relation[,] I don't care their age[,] I don't care if they are mentally handicap[,] I'm murdering them in front of their entire family[,] same goes to the first war supporter or service member who's willing to bootlick."

- "Donald j Trump likes little boys and little girls and is an Israeli asset he deserves to be raped and murdered @REALDONALDTRUMP @donaldjtrumpjr I will kill you bitch ass dad."

- (To Donald Trump Jr.) "I'm going to rape your worthless father while Benjamin netanyacuck sits in the oval CUCK throne and watches with his jugular cut while the life leaves his pathetic eyes and then after I'm done your getting raped."

2

USA V. SMITH                                           1:26-CR-15

**ORDER DENYING MOTION FOR REVIEW OF DETENTION ORDER [ECF NO. 24]**

- "I'm gonna give [ICE agents] my name and where to find me so stay tuned you might get to see me rape and kill some proud Nazi boy fucks."

On March 24, 2026, the Magistrate Judge held a detention hearing. The same day, the Magistrate Judge entered a Detention Order. See ECF No. 15. In the Detention Order, the Magistrate Judge found by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. The Magistrate Judge found that Smith is not a flight risk. Smith filed a motion to review the Detention Order, and the Government responded in opposition. See ECF Nos. 24, 26. Trial is currently scheduled for July 7, 2026.

Smith has moved the Court to review the Detention Order in accordance with 18 U.S.C. § 3145. The Court conducts a de novo review. To detain Smith pending trial, the Court must find that no condition or combination of conditions will reasonably assure the appearance of Defendant as required and the safety of any other person and the community. See 18 U.S.C. § 3142(e)(1). It appears that the parties agree that Smith is not a flight risk. The "safety" prong must be shown by clear and convincing evidence. See United States v. Simms, 128 F. App'x 314, 315 (4th Cir. 2005) (unpublished). The Court must consider the following factors under 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the

**USA V. SMITH**                                                    **1:26-CR-15**

**ORDER DENYING MOTION FOR REVIEW OF DETENTION ORDER [ECF NO. 24]**

offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

USA V. SMITH                                                          1:26-CR-15

**ORDER DENYING MOTION FOR REVIEW OF DETENTION ORDER [ECF NO. 24]**

In the motion, Smith writes that he has a non-violent background, is young (20 years old), has minimal criminal history, has ties to the community, has a history of employment, has a supportive family, has a history of successful supervision by juvenile courts, has no access to firearms or weapons, and did not plan to act on any alleged threats.  Smith argues that the Government did not provide sufficient details in its earlier proffer that Smith had previously brandished a firearm during an argument, and Smith argues that conditions of release could ensure the safety of the community.  In response, the Government writes that Smith's father told police that Smith has anger management issues, has threatened to kill him (the father) multiple times (but never acted on the threats), often gets into fights, and brandished his father's rifle at someone with whom he was having a disagreement.  The Government also points out Smith's Facebook page, which shows him with two semi-automatic rifles and a pistol. The Government argues that Smith has made explicit threats to numerous government officials, has directly threatened an ICE tipline operator and her family, has access to firearms, and is prone to fighting.  The Government believes that conditions of release cannot reasonably assure the safety of the community.

During the hearing on May 12, 2026, the Government called Secret Service Special Agent Cody Lough ("Agent Lough") as a

USA V. SMITH                                                    1:26-CR-15

**ORDER DENYING MOTION FOR REVIEW OF DETENTION ORDER [ECF NO. 24]**

witness.  Agent Lough testified that he participated in Smith's arrest in this case.  When Smith was arrested, he was provided <u>Miranda</u> warnings and interviewed.  Smith admitted to making the social media posts alleged in the Indictment.  Smith told law enforcement that he had not planned to hurt the president but would not be unhappy if someone else did.

Law enforcement interviewed Smith's father (or perhaps stepfather), Kevin Smith.  Kevin Smith told officers that Smith often made threats and would become angry, but Kevin Smith did not believe that he would actively follow through with any of the threats.  Kevin indicated that Cody Smith had threatened to kill him.  To Kevin's knowledge, Cody Smith did not have a drug or alcohol problem.  Approximately four years ago, Cody Smith was in an argument with someone, and he came inside to grab Kevin's firearm and pointed it at the person.

Law enforcement interviewed Cody Smith's sister.  His sister did not believe that he had a drug or alcohol problem.  Officers also interviewed Cody's sister's fiancé.  The fiancé had once asked Smith to move his car, and Smith threatened to "blow the place up" if his car was touched. Agent Lough asked the fiancé if he believed that Smith would follow through with his threats, and the fiancé said that given the opportunity, he believed that he would.

Agent Lough reviewed Government Exhibits 1 and 2.  The

USA V. SMITH                                                    1:26-CR-15

**ORDER DENYING MOTION FOR REVIEW OF DETENTION ORDER [ECF NO. 24]**

exhibits were downloaded from Smith's phone.  Exhibit 1 is a snapchat conversation.  In it, Smith sends the recipient photographs of himself flexing his muscles and pointing a firearm toward the camera, with two other firearms on his lap.  The messages were sent on January 14, 2026, but it is unclear when the photographs were taken.  Exhibit 2 is a set of three photographs. One photograph is the same photograph in Exhibit 1.  Exhibit 2 also includes two more photographs of Smith holding firearms, including, in one photograph, two semi-automatic rifles.  It also includes one picture of firearms and ammunition.  It is again unclear when the photographs were taken, but January 2026 is the same period when the threats were posted in this case.

Agent Lough testified that he was provided a letter by a cellmate of Smith's at the regional jail, Timothy Furr ("Furr"). Agent Lough interviewed Furr.  At that time, Furr had been released from jail.  The letter indicated Furr's concerns about Smith's statements in jail, and the information was consistent with other types of threatening statements made by Smith.  In the interview, Furr shared that Smith would talk about the guns he had and wanting to be "the guy" who took the shot at the president.  According to Furr, Smith said that he wanted to be like Lee Harvey Oswald and had associates who were also looking to hurt the president.  Furr stated that Smith would brag that his charges were federal while

USA V. SMITH                                        1:26-CR-15

**ORDER DENYING MOTION FOR REVIEW OF DETENTION ORDER [ECF NO. 24]**

other inmates had state charges.  Smith introduced himself as "Trump-killer" and would go by that name with other inmates.  Furr stated that Smith also told people that he had hidden guns at his parents' house.  Smith had stated that he was in a relationship with a hotel employee who would keep guns for him too.  Furr said that Smith told him that Smith had killed a friend when he was 15 years old.

Agent Lough also interviewed Carlos Perez, another cellmate of Smith's.  This was approximately one week after the interview with Furr.  Perez also indicated that Smith was bragging about his crimes.  Perez talked about the hidden guns at Smith's parents' house.  Perez said that Smith had asked his sister's boyfriend to collect a firearm out of his car (law enforcement had missed it during the arrest).  Perez said that Smith told him that Smith had killed a friend when he was 15 years old.

On cross examination, it was established that during the search of Smith's home, no firearms were located.  To Lough's knowledge, Smith has never previously been charged with a felony.  Kevin Smith and Cody Smith had a contentious relationship.  Further, Cody Smith's relationship with his sister's fiancé was "up and down."  Furr was in custody on a possession charge, but agent Lough is unsure whether Furr has prior felony convictions.  Perez's charges included some type of fraud/impersonation in

USA V. SMITH                                                    1:26-CR-15

**ORDER DENYING MOTION FOR REVIEW OF DETENTION ORDER [ECF NO. 24]**

Marion County, West Virginia.  Agent Lough is unaware of any instance when Smith harmed someone.  On redirect, it was established that although there is no metadata for the photographs admitted into evidence, the photographs resemble what Smith looked like at the time of arrest.  Agent Lough did not make any promises to Furr, and Furr did not condition any statement that he made to Lough.  Perez's statements were largely consistent with what Furr told law enforcement.  The Government also proffered that Smith had been subject to internal discipline at the regional jail.

In argument, counsel for Smith proffered that the regional jail is a scary environment for a young man.  To the extent that Smith put on a "tougher face" by making comments to other inmates, such statements would be expected.  Beyond that, Smith told counsel that he sold all of his firearms in fall 2025.  Counsel proffered that Smith has a lengthy history of substance abuse.  She hopes to place him in a long-term treatment program.

The Government argued that the evidence shows that Smith poses a danger to society.  While it is possible that Smith is "all talk," the Government argues that the corroboration of statements is critical here.  Furr and Perez were not providing information to law enforcement for their own benefit, and their statements were consistent.  The Government argues that all of these facts reflect a pattern of activity where there is a lack of control, a

USA V. SMITH                                                    1:26-CR-15

**ORDER DENYING MOTION FOR REVIEW OF DETENTION ORDER [ECF NO. 24]**

concern about Smith's capacity to harm, an interest in firearms, and a relatively recent possession of firearms, and in totality, there is no set of conditions that can provide assurance that the community would be safe upon his release.

The Court has considered all evidence, argument, and briefing.  Upon doing so, the Court **FINDS** that the Government has satisfied its burden by clear and convincing evidence.

First, the nature and circumstances of the charged offenses are serious and concerning.  The charges in Counts One and Two and punishable by up to five years in prison, and the charges in Counts Three and Four are punishable by up to ten years in prison.  The specific language used by Smith in making the alleged threats, some of which is cited above, is disturbing.  This factor weighs against release.

Second, the weight of the evidence appears to be strong. Agent Lough testified that Smith was given Miranda warnings and proceeded to admit to the statements alleged in the Indictment. This factor weighs against release.

Third, Smith's personal history and characteristics show a pattern of threats and instability.  While he has no criminal history, he has a history of brandishing a firearm during a disagreement and making violent threats toward others.  His history includes an interest in firearms and undisputed bragging about

USA V. SMITH                                                    1:26-CR-15

**ORDER DENYING MOTION FOR REVIEW OF DETENTION ORDER [ECF NO. 24]**

hidden firearms.  Based on Smith's appearance In the photographs, it appears, it appears that he recently possessed firearms.  This factor weighs against release.

Fourth and finally, the Court has assessed the nature and seriousness of the danger to any person or the community that would be posed by Smith's release.  Smith allegedly threatened not only the president but also other government officials and citizens.  The potential danger here, should Smith choose to act on any of his threats, is great, especially given his interest, access to, and recent possession of firearms.  This factor weighs against release.

After weighing all of the factors, the Court finds by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person and the community.  Accordingly, *Defendant Smith's Motion for Review of the Detention Order* [ECF No. 24] is **DENIED.**

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record, the Office of Probation, and the United States Marshals Service.

DATED: May 14, 2026

_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA